UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**THE TAILWIND GROUP, INC.,** *et al.*,

    **Plaintiffs,**

v.

**FIRE GUARD, LLC,** *et al.*,

    **Defendants.**

:

:

**Case No. 2:21-cv-261**
**Judge Sarah D. Morrison**
**Magistrate Judge Chelsey Vascura**

## OPINION AND ORDER

This case is before the Court on Fire Guard LLC's Motion for Summary Judgment. (ECF No. 111.) Plaintiffs oppose the Motion (ECF No. 131), and Fire Guard filed a Reply (ECF No. 132). The Motion is ripe for decision.

### I. STATEMENT OF FACTS

Tailwind Group, Inc. and Travelers Indemnity Company brought this suit after a fire sprinkler pipe froze and broke on January 31, 2019 at an apartment complex known as The Griff in Columbus, Ohio ("the Property") resulting in water damage to the building and contents. Travelers insured the Property.

Plaintiffs filed this suit against Fire Guard and several other entities and John Doe individuals. As a result of settlements and other dismissals, Fire Guard is the only remaining defendant.

Plaintiffs brought negligence, breach of warranties (express and implied), and breach of contract claims against Fire Guard.

### A. Construction of The Property

The Property was constructed between 2015 and 2017. At that time, the owner of the Property was T.H.E. Griff, LLC and the General Contractor was Metro Development II, LLC. Metro hired several subcontractors, including Fire Guard; Fire Guard was hired to design and install the fire suppression systems in the Property. (Subcontract Agreement, ECF No. 111-2.)

### B. The Tailwind Corporate Entities

There are several "Tailwind" entities. The Property is now owned by Tailwind Griff, LLC[1] and is managed by Tailwind Management, Inc. (Sather Aff., ECF No. 128, ¶¶ 4, 5.) Tailwind Group is the parent company of Tailwind Management and all profits of Tailwind Management "flow directly" to the parent. (*Id.* at ¶¶ 3, 9.)

Tailwind Group and Tailwind Griff are "affiliated entities" with common owners and guarantors. (*Id.* at ¶ 6.) Tailwind Group is the named insured under a Travelers insurance policy that covers the Property. (*Id.* at ¶ 8.) When a claim was made for the water damage to the Property underlying this case, Travelers paid $205,999.52 to Tailwind Griff, LLC for the losses. (*Id.* at ¶¶ 16, 17; Travelers' Payments, ECF No. 128-4.)

Plaintiffs state that the funds paid by Travelers to Tailwind Griff "flowed directly to the Tailwind Group, Inc. through its wholly owned subsidiary Tailwind Management, Inc." (Sather Aff., at ¶ 8.)

---

[1] T.H.E. Griff, LLC conveyed ownership of the Property to Tailwind Griff, LLC in June 2018. (Quit Claim Deed, ECF No. 111-4.)

### C. The Loss at the Property

On January 31, 2019, a fire sprinkler pipe froze and broke in Apartment 211 in the Property, causing the pipe to shoot gallons of water through a soffit into the living area of the apartment before the water flowed into the hallway and down an elevator shaft. (Mumaugh Depo., ECF No. 130, PAGEID # 2588–89.) The parties agree that the pipe's PVC suppression line broke due to a "freeze-thaw" phenomenon—extremely cold air penetrated the Property's exterior wall, freezing the sprinkler pipe and causing it to fracture. (ECF No. 111, PAGEID # 2074; ECF No. 131, PAGEID # 2766.)

The parties do not agree who is at fault for the freeze-thaw of the suppression line. Plaintiffs claim that Fire Guard is responsible as the fire suppression installation contractor and that Fire Guard failed to install the sprinkler head as required by the product specifications. (ECF No. 131, PAGEID # 2767–68.) Fire Guard argues that another subcontractor is responsible for the failure in the sprinkler pipe because it was that subcontractor's responsibility to install insulation throughout the exterior walls (including the area around the sprinkler pipes) and to apply sealant to all exterior penetrations to prevent outside air from infiltrating the building. (ECF No. 111, PAGEID # 2074–75, 2077.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing there are no genuine

3

issues of material fact, which may be achieved by demonstrating the nonmoving party lacks evidence to support an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56). When evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

A genuine issue exists if the nonmoving party can present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993). In other words, "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party).

### III. ANALYSIS

Fire Guard moves for summary judgment on several grounds, first arguing that neither of the Plaintiffs in this case has standing to sue for the damages to the Property. (ECF No. 111, PAGEID # 2078–80.) Assuming, *arguendo*, that Plaintiffs have standing, Fire Guard next argues that it did not owe them a tort duty, so it is

4

entitled to judgment on their negligence claim. (*Id.* at 2080–82.) Finally, Fire Guard argues that it does not have privity of contract with either of the Plaintiffs, so it is also entitled to judgment on Plaintiffs' contract-based claims. (*Id.* at 2082–83.)

### A. Travelers has standing, so Plaintiffs may proceed with their identical claims.

Standing is "the threshold question in every federal case," and, if the plaintiff lacks standing, the federal court lacks jurisdiction. *Warth v. Seldin,* 422 U.S. 490, 498 (1975). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Id.* As the Supreme Court explained nearly thirty years ago,

> a party seeking to invoke a federal court's jurisdiction must demonstrate three things: (1) "injury in fact," by which we mean an invasion of a legally protected interest that is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical," [*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)] (citations, footnote, and internal quotation marks omitted); (2) a causal relationship between the injury and the challenged conduct, by which we mean that the injury "fairly can be traced to the challenged action of the defendant," and has not resulted "from the independent action of some third party not before the court," *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 41–42 [] (1976); and (3) a likelihood that the injury will be redressed by a favorable decision, by which we mean that the "prospect of obtaining relief from the injury as a result of a favorable ruling" is not "too speculative," [*Allen v. Wright*, 468 U.S. 737, 752 (1984)]. These elements are the "irreducible minimum," *Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 [] (1982), required by the Constitution.

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 663–64 (1993).

The burden is on the party invoking federal jurisdiction to demonstrate Article III standing. *Stalley v. Methodist Healthcare,* 517 F.3d 911, 916 (6th Cir.

5

2008). At the summary judgment stage, "proof of standing is subject to the same burden of proof and standard of review as any other critical fact: Plaintiffs must be able to show at least the existence of a genuine issue of material fact as to the elements of standing if their claims are to survive." *Executive Transp. System, LLC v. Louisville Regional Airport Authority*, 678 F.Supp.2d 498, 505 (W.D. Ky. 2010). Nevertheless, "only one plaintiff needs to have standing in order for the suit to move forward." *Parsons v. U.S. Dep't of Just.*, 801 F.3d 701, 710 (6th Cir. 2015). "When one party has standing to bring a claim, the identical claims brought by other parties to the same lawsuit are justiciable." *Ne. Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612, 623–24 (6th Cir. 2016),

    Travelers has standing to bring this action against Fire Guard.

    Fire Guard seems to base its arguments to the contrary on allegations in the Complaint that Travelers is the subrogee of the Tailwind Group. (ECF No. 111, PAGEID # 2080.) But as Fire Guard admits, Travelers also insured Tailwind Griff and Travelers paid Tailwind Griff for the damage to the Property. (*Id.* at 2079) As such, Traveler's subrogation rights permit it to step into the shoes of Tailwind Griff—who, as the owner of the Property, has standing to bring claims against Fire Guard for the damage to its property.

> The well-settled general rule is that if insured property is destroyed or damaged through the fault or neglect of another than the insured, the insurer, upon payment of the loss, will be subrogated to the rights of the insured owner to recover from the wrongdoer to the extent that the insurance company has been obligated to pay, and has paid, and that the rights of the insurance company under such circumstances are precisely those of the insured against the wrongdoer.

*Motorists Mut. Ins. Co. v. Bill*, 56 Ohio St.2d 258, 267, 383 N.E.2d 880 (1978) (citation ommitted).

If an insurer bring claims as subrogee, its insured is not required to be a party to the action. As the Ohio Supreme Court has recognized:

> It is perhaps desirable, to the end of minimizing litigation, that insured and insurer join in bringing one action to recover both the deductible and nondeductible portions of property damage. *But it is not necessary to do so, although such joinder may be required upon motion of the tort-feasor. * * *'* (Emphasis added.)
>
> [Thus, w]here, by virtue of a prior contract of indemnity and subrogation, an insurer pays its insured for property damage sustained and becomes thereby subrogated to the rights of its insured to the amount of such payment, such insurer may prosecute a separate action against the party causing such injury to the extent of the amount paid under such contract.
>
> Where only a part of a property damage claim is paid by the insurer and it becomes subrogated, therefore, to only a part of the claim against the tort-feasor, such tort-feasor may require either the assignor or the subrogee to be made a party to an action brought against him by the other.

*Hoosier Casualty Co. v. Davis*, 172 Ohio St. 5, 9, 173 N.E.2d 349 (1961). *See also Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 532 (6th Cir. 2002) (insurer without subrogation rights lacked Article III standing and could not move to substitute true subrogee as real party in interest).

Because Travelers has Article III standing to assert its subrogated interest against Fire Guard, Tailwind Group's identical claims are justiciable.

### B. Fire Guard did not owe a tort duty to Plaintiffs.

Fire Guard argues that it did not owe a tort duty because its duties arose only from its subcontract with Metro. In response, Plaintiffs argue that Fire Guard

7

had a duty imposed by law to perform its work in accordance with industry standards of good workmanship. (ECF No. 131, PAGEID # 2774–75.)

"In Ohio, a breach of contract does not create a tort claim." *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 151, 684 N.E.2d 1261 (9th Dist. 1996). Generally, the existence of a contract precludes a tort claim on the same underlying actions, unless the defendant also breached a duty owed independent of the contract. *Id.*; *Raze Internatl., Inc. v. Southeastern Equip. Co.*, 2016-Ohio-5700, 69 N.E.3d 1274, ¶ 62 (7th Dist.) (citation omitted). "Where the causes of action in tort and contract are 'factually intertwined,' a plaintiff must show that the tort claims derive from the breach of duties that are independent of the contract and that would exist notwithstanding the contract." *Stancik v. Deutsche Natl. Bank*, 8th Dist. No. 102019, 2015-Ohio-2517, 2015 WL 3899224, ¶ 40 (citing *Cuthbert v. Trucklease Corp.*, 10th Dist. No. 03AP-662, 2004-Ohio-4417, 2004 WL 1879023, ¶ 44).

Plaintiffs assert that the failure to perform in a workmanlike manner is an independent tort. It is not. Under Ohio law, "[w]hen a party contracts for future construction services. . ., the contract includes an implied duty to perform in a workmanlike manner. Consequently, if the builder or contractor breaches that implied duty, it is liable in contract, not tort." *Jarupan v. Hanna*, 2007-Ohio-5081, 878 N.E.2d 66, ¶ 18, fn. 1 (10th Dist.) (internal citations omitted); *see also Hilsinger Building and Dev. Corp. v. Terracon Consultants, Inc.*, No. 1:18-CV-900, 2019 WL 4601774, at *7 (S.D. Ohio Sept. 23, 2019) (Black, J.) ("Ohio law recognizes a duty of

8

builders or contractors to perform work in a workmanlike manner—a duty which arises out of contract law.") (collecting cases).

Fire Guard's alleged failure to perform in a workmanlike manner arises out of its contract with Metro for the future construction of the fire suppression system at the Property. Although the fire suppression system was completed before discovery of Fire Guard's alleged improper installation of the system, the contract contemplated that Fire Guard would be paid for its performance of future services. *See Hanna v. Groom*, 10th Dist. No. 07AP-502, 2008-Ohio-765, 2008 WL 500530, ¶ 21 (claim for damages caused by paving contractor was governed by contract law because the paving contract was for future services).

Accordingly, Fire Guard's duties with respect to work performed on the Property are governed by contract and Fire Guard is entitled to judgment as a matter of law on Plaintiffs' negligence claim.

## C. Fire Guard did not owe a contractual duty to Plaintiffs.

Fire Guard argues that Plaintiffs' claims for breach of warranty and breach of contract fail because it lacked privity of contract with them and with Tailwind Griff.

There is no dispute that neither Plaintiffs nor Tailwind Griff were parties to Fire Guard's subcontract. Thus, to sue Fire Guard for breach of contract and breach of contractual warranties, Plaintiffs must show that they, T.H.E. Griff, LLC, or Tailwind Griff[2] was an intended, not merely an incidental, beneficiary of the

---

[2] A subsequent owner can sue a subcontractor if it can prove it was in privity to the subcontract or an intended third-party beneficiary. *Lin v. Gatehouse Construction Co.*, 84 Ohio App.3d 96, 102, 616 N.E.2d 519 (8th Dist. 1992).

9

contract between Fire Guard and Metro. *See Curl v. Volkswagon of Am., Inc.*, 114 Ohio St.3d 266, 2007-Ohio-3609, 871 N.E.2d 1141, 1147–48 (2007); *Lawyers Coop. Publ'g Co. v. Muething*, 65 Ohio St.3d 273, 603 N.E.2d 969, 972 (1992) ("[A]bsent a contractual relationship between the plaintiff and defendant, an action based on contract for breach of warranty does not exist.").

"A third-party beneficiary is one for whose benefit a promise is made, but who is not a party to the contract encompassing the promise." *Berge v. Columbus Community Cable Access*, 136 Ohio App.3d 281, 303, 736 N.E.2d 517 (10th Dist. 1999); *Chitlik v. Allstate Ins. Co.*, 34 Ohio App.2d 193, 196, 299 N.E.2d 295 (8th Dist. 1973). An intended beneficiary has enforceable rights under the contract, but an incidental beneficiary does not. *Hill v. Sonitrol of Southwestern Ohio*, 36 Ohio St.3d 36, 40, 521 N.E.2d 780 (1988).

To be an intended beneficiary, the contract must be entered into with the intent to benefit that person. *Berge*, at 303, 736 N.E.2d 517. Where the performance of a promise under the contract satisfies a duty owed by the promisee to the third-party beneficiary, he or she is an intended beneficiary; but where the performance of a promise merely confers some benefit and is not in satisfaction of a duty, the third-party beneficiary is an incidental beneficiary. In other words, "[t]here must be evidence that the promisee assumed a duty to the third party." *Trinova Corp. v. Pilkington Bros., P.L.C.*, 70 Ohio St.3d 271, 277–28, 1994-Ohio-524, 638 N.E.2d 572 (1994).

For example, in *Corporex Dev. & Constr. Mgmt, Inc. v. Shook, Inc.*, an Ohio

appellate court considered whether a real estate developer was an intended beneficiary of a contract between a contractor and a subcontractor. 10th Dist. No. 03AP–269, 2004–Ohio–1408, 2004 WL 557339, *rev'd on other grounds by Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.*, 106 Ohio St. 3d 412, 2005-Ohio-5409, 835 N.E.2d 701. The court applied the "intent to benefit" test before concluding that, although some sections of the contract in that case conferred benefits upon the developer, the evidence was insufficient to show that the developer was either a party to the contract or an intended third-party beneficiary. *Id.* at ¶¶ 41, 45–46 (citing 9 Corbin on Contracts (2002 Interim Ed.) Section 779D, at 40–41). As *Corporex* explained:

> [Contracts between a principal contractor and subcontractor] are made to enable the principal contractor to perform; and their performance by the subcontractor does not in itself discharge the principal contractor's duty to the owner with whom he has contracted. The installation of plumbing fixtures or the construction of cement floors by a subcontractor is not a discharge of the principal contractor's duty to the owner to deliver a finished building containing those items; and if after their installation the undelivered building is destroyed by fire, the principal contractor must replace them for the owner, even though he must pay the subcontractor in full and has no right that the latter shall replace them.

*Id.* at ¶ 12, fn. 9. (citation omitted) (alteration in original).

Here, Plaintiffs argue that Tailwind Griff is a third-party beneficiary of Fire Guard's contract with Metro, relying on paragraphs 6.1 and 11.1 of the contract. (ECF No. 131, PAGEID # 2778.) Neither of these paragraphs support a finding that Fire Guard intended Tailwind Griff to be a third-party beneficiary of the contract. Paragraph 6.1 only lays out Fire Guard's contractual duty to perform in a good and workmanlike manner, it does not contain language reflecting an intent to benefit

11

anyone other than Metro. And Paragraph 11.1 spells out Fire Guard's indemnification obligations, it also does not contain language demonstrating an intent to benefit anyone other than Metro.

Even looking beyond the two paragraphs on which Plaintiffs rely, Fire Guard's contract contains no indication that they, T.H.E. Griff, or Tailwind Griff were intended beneficiaries. The closest the contract comes is paragraph 1.1, which provides that the construction of the Project "for the Contractor **and Owner**" will be "in strict and complete accordance with the Project plans, specifications, addenda and other documents. . .." (ECF No. 111-2, PAGEID # 2090) (emphasis added). But Schedule A defines the Contractor and Owner as "Metro Development II, LLC." (*Id.* at 2105.)

Accordingly, with respect to Fire Guard's subcontract, Plaintiffs did not produce evidence to demonstrate that they or Tailwind Griff were intended third-party beneficiaries. Fire Guard is entitled to judgment as a matter of law on Plaintiffs' breach of contract and warranty claims.

### IV. CONCLUSION

For the reasons set forth above, Fire Guard's Motion for Summary Judgment is **GRANTED**. (ECF No. 111.)

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison  
**SARAH D. MORRISON**  
**UNITED STATES DISTRICT JUDGE**